# United States District Court
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 4:20-CR-32 |
| | § | Judge Mazzant |
| CERISSA LYNETTE SANDERS | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion for Suppression of Evidence (Dkt. #21). Having considered the motion and the relevant pleadings, the Court finds that the motion should be **DENIED.**

## BACKGROUND

This case concerns the stop and search of Defendant Cerissa Lynette Sanders ("Sanders") and her vehicle. On September 6, 2019, Detective Villalvazo and Detective Frederick of the Lewisville Police Department were patrolling the area around a local motel known for high incidents of narcotics trafficking when they observed a white Nissan Altima in the right lane fail to stop at the designated white line located on the street of the red light. The detectives then ran a computer check on the vehicle, and it indicated the license plate had expired August 2019. The detectives activated their marked squad car's emergency lights to conduct a traffic stop on the vehicle, and the vehicle pulled into the 7-11 parking lot located at 193 W. Corporate Drive, Lewisville, Texas.

When Detective Villalvazo and Detective Frederick approached the driver's and passenger's windows, respectively, they observed that Sanders, the driver, was the only person in the vehicle. After walking up to the vehicle, both detectives immediately smelled an odor of

marijuana.  Detective Villalvazo then asked Sanders for her driver's license and insurance, and Sanders responded that she wanted a Sergeant on scene.  Detective Villalvazo asked her why, and Sanders repeated her statement and then rolled her window up.  Detective Frederick then walked to the driver side window and told Sanders to open the door.

Due to Sanders' not showing the detectives her ID or proof of financial responsibility, the detectives attempted to place her under arrest for expired registration and failure to display driver's license.  Detective Frederick opened Sanders' driver door to pull her out of the vehicle and arrest her, but Sanders tried to close the door.  Detective Frederick and Sanders fought for control of the door, and after losing control of the door, Sanders then reached underneath her seat.  Detective Villalvazo told Sanders to stop reaching, and Detective Frederick, in an effort to get her to stop reaching, entered the vehicle and grabbed her hands to place her under arrest.  Sanders then turned around and began reaching in the back seat of the passenger side. The detectives continued to tell Sanders to stop reaching, but she continued to resist.  Detective Limon, another detective who had arrived on the scene, ran to the front passenger door and opened it, informing Sanders to stop reaching or she would be tased.  Sanders stopped reaching.  The detectives then took Sanders seat belt off, pulled her out of the vehicle, and handcuffed her.  Sanders was placed under arrest for failing to display her driver's license and expired registration.  Because of her conduct with the officers, she was also charged with resisting arrest.

After the arrest, Detective Limon requested a tow truck, and the detectives began inventorying the vehicle.  While the detectives were inventorying the vehicle, they found a small black bag near where Sanders was reaching earlier.  Detective Limon opened the bag and found a gun, a Charter Arms, Model Undercover, .38 special caliber revolver, and small amounts of various

controlled substances.  Thereafter, on February 12, 2020, a grand jury indicted Sanders on one

count of felony possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Dkt. #1).

On October 2, 2020, Sanders filed this motion, seeking to suppress all evidence seized as

a result of the stop and search on September 6, 2019 (Dkt. #21).  On October 9, 2020, the

Government filed its response (Dkt. #22).  On November 17, 2021, the Court held a hearing on

Sanders' motion.  At the hearing, Special Agent Timothy Brown testified for the Government.

The Government also offered clips from Detective Villalvazo and Frederick's vehicle dash camera

video as well as body camera video from both of them taken at the time of Sanders' arrest.  The

Defense called Detective Villalvazo as a witness, and Sanders also testified as to her account of

the events.

## LEGAL STANDARD

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the

people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures." U.S. CONST. AMEND. IV.   Though the Fourth Amendment contains no provision

expressly precluding the use of evidence obtained in violation of its command, the Supreme Court

long ago established the exclusionary rule. *Davis v. United States*, 564 U.S. 229, 236 (2011).

Under the exclusionary rule, "evidence obtained in violation of the Fourth Amendment cannot be

used in a criminal proceeding against the victim of the illegal search and seizure." *United States v*

*Calandra*, 414 US 338, 347 (1974).  The rule operates as "a judicially created remedy designed to

safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal

constitutional right of the party aggrieved." *Id.* at 348.

"A defendant normally bears the burden of proving by a preponderance of the evidence

that the challenged search or seizure was unconstitutional." *United States v. Waldrop*, 404 F.3d

365, 368 (5th Cir. 2005) (citing *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001)). "However, where a police officer acts without a warrant, the government bears the burden of proving that the search was valid." *Id.* (citing *United States v. Castro*, 166 F.3d 728, 733 n.7 (5th Cir. 1999) (en banc)).  Consequently, because it is undisputed that Sanders was subject to a warrantless search, the Government bears the burden of proving the legality of the stop and the warrantless search by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

## ANALYSIS

Sanders challenges both the initial stop of her vehicle and the subsequent search of it (Dkt. #21).  As for the initial stop, Sanders argues she committed no traffic violation, so the officers lacked probable cause or reasonable suspicion to stop her vehicle (Dkt. #21 at p. 4).  She maintains that the stop was based solely on her ethnicity (Dkt. #21 at p. 6). Further, with regard to the subsequent search of her vehicle, she contends that it violated the Fourth Amendment because the police conducted a warrantless evidentiary search of the vehicle, not an inventory search (Dkt. #21 at p. 5).  In response, the Government contends the stop and ensuing search were justified.  As to the initial stop, at the hearing, the Government argued it was justified on two grounds: 1) a search on Sanders' registration indicated it was expired, and 2) Sanders committed a traffic violation in the officer's presence.  Further, the Government contended the ensuing search of her vehicle was lawful on two bases: 1) the smell of marijuana provided probable cause to search the entire vehicle, and 2) the search was a valid, inventory search.  Accordingly, the Court must determine whether the traffic stop of Sanders was justified and, if so, whether the officers possessed probable cause to conduct a search of Sanders' vehicle.  The Court will address each issue in turn.

I.      **Legality of the Stop**

Traffic stops are deemed seizures for purposes of the Fourth Amendment. *United States v. Valadez*, 267 F.3d 395, 397 (5th Cir. 2001).  The decision to stop an automobile is reasonable under the Fourth Amendment where the police have probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996); *see also United States v. Khanalizadeh*, 493 F.3d 479, 482 (5th Cir. 2007).  "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of [a stop or] arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *United States v. Zavala*, 541 F.3d 562, 575 (5th Cir. 2008) (quotations and internal citations omitted).  To be sure, an officer has probable cause to conduct a traffic stop when he personally observes the defendant commit the traffic violation. *United States v. Rosales-Giron*, 592 F. App'x 246, 251 (5th Cir. 2014).  Further, "[t]he rule established by the Supreme Court in *Whren* allows officers to justify a stop by the occurrence of a traffic violation even though this is not the real reason for the stop." *United States v. Cole*, 444 F.3d 688, 689 (5th Cir. 2006) (citing *Whren*, 517 U.S. at 810).  The legal justification for the traffic stop, however, must be "objectively grounded." *Id.* (citing *United States v. Miller*, 146 F.3d 274, 279 (5th Cir.1998)).

Having heard the testimony and considered the evidence presented, the Court finds that there was probable cause to believe that a traffic violation had occurred and that the justification for the stop was objectively grounded.  Specifically, Detective Villalvazo testified unequivocally that he observed Sanders' car fail to stop at the designated point before entering the marked crosswalk at the red light in question.  Such an action constitutes a traffic violation under Texas

Transportation Code § 544.010(c) and §544.007(d).[1]  Further, his testimony was consistent with his incident report, and photograph evidence confirms that Sanders' car was stopped beyond the designated point.  While Sanders testified that she did, in fact, stop at the designated line before entering the intersection, the Court finds Detective Villalvazo's testimony to be more credible.[2] *See United States v. Santiago*, 410 F.3d 193, 198 (5th Cir. 2005) (noting that credibility determinations are for the district court).

Further, even if the detectives used this traffic violation as a pretext to stop Sanders' vehicle, the stop would still be constitutional.  Indeed, when an officer observes what he objectively believes is a traffic offense, the decision to stop the vehicle is reasonable, regardless of the officer's subjective motivation.  *United States v. Sanchez–Pena*, 336 F.3d 431, 437 (5th Cir. 2003).  Thus, Sanders' argument that the evidence should be suppressed because the stop "was an instance of ethnic profiling" is also unavailing.

Because Sanders' failure to stop behind the designated line violated Texas law, the detectives had probable cause to effect the traffic stop.[3]  The Court next considers the lawfulness of the police officers' conduct during the traffic stop and their subsequent search of Sanders' car.

---

[1] Texas Transportation Code § 544.010(c) provides, in part, that an operator of a vehicle is required to "stop before entering the crosswalk on the near side of the intersection." Texas Transportation Code § 544.007(d) provides that "[a]n operator of a vehicle facing only a steady red signal shall stop at a clearly marked stop line."

[2] The Court notes that Sanders admitted to using CBD prior to getting into her vehicle on the night in question, which might have influenced her perception or memory—though she denied that.

[3] At the hearing, the Government also contended that the detectives had probable cause because the detectives had run the vehicle's plates and their system indicated Sanders' registration was expired.  Sanders heavily disputed this contention, arguing that when the stop was conducted, she was still within the grace period for registration.  However, the Court need not resolve the parties' dispute over this since the Court finds that Sanders' traffic violation—failing to stop behind the designated line—provided the detectives with probable cause. *See United States v. Lopez-Moreno*, 420 F.3d 420, 431 (5th Cir. 2005)

## II.      Legality of the Search

Sanders argues that the warrantless search of her car violated the Fourth Amendment (Dkt. #21 at p. 5).  In response, at the hearing, the Government contended that the search was reasonable on two grounds: 1) the detectives developed probable cause to search her vehicle based on the smell of marijuana, and 2) the search was a lawful inventory search.  The Court agrees with the Government on both points.

### A.  Probable Cause Based on Smell of Marijuana

It is well settled that warrantless searches of automobiles are permitted by the Fourth Amendment if the officers have probable cause to believe that the vehicle contains contraband or other evidence of a crime. *See United States v. Ross*, 456 U.S. 798, 809–10 (1982); *United States v. Buchner*, 7 F.3d 1149, 1154 (5th Cir. 1993), *cert. denied*, 510 U.S. 1207 (1994); *United States v. Kelly*, 961 F.2d 524, 527 (5th Cir. 1992).  "Probable cause exists when facts and circumstances within the knowledge of the arresting officer would be sufficient to cause an officer of reasonable caution to believe that an offense has been or is being committed." *United States v. Ned*, 637 F.3d 562, 567 (5th Cir. 2011) (quoting *United States v. Carrillo–Morales*, 27 F.3d 1054, 1062 (5th Cir. 1994)).  "A determination of probable cause is also based on the totality of circumstances and must be predicated on more than a 'bare suspicion.'" *United States v. Guerra*, 605 Fed. App'x. 295, 297 (5th Cir. 2015) (per curiam) (citing *United States v. Banuelos-Romero*, 597 F.3d 763, 768 (5th Cir. 2010)).

Further, the Fifth Circuit has repeatedly held that the smell of marijuana gives rise to probable cause to search a vehicle for drugs. *See, e.g., United States v. Lork*, 132 Fed. App'x. 34, 35 (5th Cir. 2005) (finding detectable odor of marijuana emanating from a vehicle provided probable cause for the search of the vehicle); *United States v. McSween*, 53 F.3d 684, 686–687

(5th Cir. 1995) (noting the smell of marijuana alone may be enough for a finding of probable cause); *United States v. Reed*, 882 F.2d 147, 149 (5th Cir. 1989) (finding the officer's detection of marijuana "in itself . . . justified the subsequent search of [the defendant's] vehicle"); *United States v. Henke*, 775 F.2d 641, 645 (5th Cir. 1985) ("Once the officer smelled the marijuana, he had probable cause to search the vehicle."); *United States v. Gordon*, 722 F.2d 112, 114 (5th Cir. 1983) (same).

Here, Detective Villalvazo testified that he detected an odor of marijuana as soon as he walked up to Sanders' vehicle.  His testimony also indicated that he was familiar with identifying such narcotic odors. Further, the incident report and body camera video from the night in question corroborate his testimony.  Indeed, the body camera video indicates that Detective Frederick and Detective Villalvazo discussed the smell after walking up to the vehicle and concluded that it was emanating from Sanders' car.  That Detective Villalvazo's testimony is credible is highlighted by the fact that marijuana was found in the vehicle, and Sanders admitted at the hearing to using CBD earlier that day.  Thus, having observed an odor of marijuana coming from Sanders' vehicle, the Court finds the detectives had probable cause to search the entire vehicle.[4]

### B. Impoundment and Inventory Search

In the alternative, the Court agrees that the search of Sanders' vehicle was justified under a valid impoundment and inventory search.  While Sanders contends that the inventory search

---

[4] In her motion, Sanders also argues in one sentence that the opening of her car door was an unconstitutional search under the Fourth Amendment and not reasonable under the circumstances (Dkt. #21 at p. 5).  Sanders did not raise this issue at the hearing, and the Government likewise did not mention it in its briefing or at the hearing.  Nevertheless, the Court finds that since the detectives smelled marijuana immediately after walking up to the vehicle—and before Detective Frederick opened Sanders' door—the opening of Sanders' door did not violate the Fourth Amendment because the detectives had probable cause when the door was opened.  That the detectives smelled marijuana before Sanders' door was opened is supported by Detective Villalvazo's testimony and body camera video from the night in question showing the detectives discuss the smell from Sanders' car before the door was opened.  While Sanders attempted to discredit this testimony by pointing out that the detectives' comments came while Sanders' window was rolled down, Detective Villalvazo testified that marijuana is a strong odor and can still be smelled regardless of whether windows are rolled down.

along with the impoundment were conducted in an attempt to circumvent the Fourth Amendment's warrant requirement by gathering evidence in a situation where the officer would not be able to obtain a warrant, the Court disagrees.

Under the Fourth Amendment, "[w]arrantless searches and seizures are '*per se* unreasonable unless they fall within a few narrowly defined exceptions.'" *United States v. Kelly*, 302 F.3d 291, 293 (5th Cir. 2002) (quoting *United States v. Roberts*, 274 F.3d 1007, 1011 (5th Cir. 2001)).  Two of these exceptions include the "community caretaking" exception, *United States v. McKinnon*, 681 F.3d 203, 208 (5th Cir. 2012), and the inventory exception, *United States v. Hahn*, 922 F.2d 243, 246 (5th Cir.1991).  Given that "the decision to impound is properly analyzed as distinct from the decision to inventory," *McKinnon*, 681 F.3d at 207 n.3 (internal quotations and citations omitted), the Court analyzes each in turn.

i.        **Impoundment**

It is well established that police have the authority, despite the absence of a warrant, to seize and remove from the streets automobiles in the interests of public safety and as part of their community caretaking functions. *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976).  In the Fifth Circuit, whether the "community caretaking" exception applies ultimately turns on "the reasonableness of the 'community caretaker' impound viewed in the context of the facts and circumstances encountered by the officer." *McKinnon*, 681 F.3d at 208 (citing *Cooper v. California*, 386 U.S. 58, 59 (1987)).  The reasonableness of law enforcement's decision to impound a vehicle for "community caretaking" can also turn on whether police officers followed applicable local procedures established for impounding vehicles. *See, e.g., United States v. Ponce*, 8 F.3d 989, 995 (5th Cir. 1993) (footnote omitted) ("Furthermore, Officer Nichols' decision to impound the pickup truck did not contravene the Austin Police Department procedures. The procedures

9

authorized impoundment when '[t]he operator has been arrested and there is no responsible adult present to immediately take custody of the vehicle.'").  Further, an officer's "ulterior motive to search" does not invalidate an otherwise-lawful impoundment executed in accordance with standard procedures established by the police department. *McKinnon*, 681 F.3d at 210.

The Court determines that the detectives' decision to impound the vehicle was reasonable under the Fourth Amendment.  At the time of her arrest, [5] Sanders was the sole occupant of the vehicle.  As there was no third party immediately available to entrust with the vehicle's safekeeping, the detectives could not be certain how long the car would be unattended in Sanders' absence.  And while the detectives did not have to impound the vehicle, as Detective Villalvazo admitted on cross-examination, it was certainly reasonable to do so.  Indeed, by impounding the vehicle, the detectives ensured that the vehicle was not left in a parking lot where it could have become a nuisance, stolen or damaged.  Further, there is no indication that the detectives did not act in good faith or solely for the purpose of investigation in exercising their discretion to impound the car.

Moreover, the facts here are similar to other cases in the Fifth Circuit that have found the decision to impound a vehicle to be reasonable. *See McKinnon*,, 681 F.3d at 208–09 (finding that decision to impound was reasonable where the vehicle was parked in a public place and could have become a nuisance and the vehicle could not be lawfully driven away from the scene); *Ponce*, 8 F.3d at 996 (impounding was reasonable where the vehicle would otherwise have been left "in a public parking lot where it could have become a nuisance, and where it could have been damaged

---

[5] Sanders does not appear to dispute the validity of her arrest.  In any event, the Court notes her arrest was lawful based on its finding that she failed to display her driver's license and committed a traffic violation within the officer's view. *See* TEX. CODE CRIM. PROC. art 14.01(b) (establishing that an officer can make an arrest without a warrant for a misdemeanor if the offense is committed within the officer's presence or view); *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 322 (2001) (confirming that an officer may arrest an individual without violating the Fourth Amendment if there is probable cause to believe that the offender has committed even a very minor criminal offense in the officer's presence).

or stolen"); *United States v. Staller*, 616 F.2d 1284, 1289 (5th Cir. 1980) (noting that a vehicle was locked and legally parked "does not necessarily negate the need to take the vehicle into protective custody"); *United States v. Ortiz-Macias*, No. 6-14-cr-0035, 2016 WL 347323, at *4 (E.D. Tex. Jan. 28, 2016) (finding that towing of a vehicle was not an improper seizure where the vehicle was parked in a public area, there was no on present to drive it off, and no one could be reasonably tracked down).  Because the Court finds that the detectives' decision to impound the vehicle was reasonable, the Court turns to whether the inventory search was proper.

### ii.    Inventory Search

"[I]nventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987).   Once a vehicle is impounded, the police may inventory the vehicle's contents "to protect the owner's property while it remains in police custody, to protect the police against claims of lost or stolen property and to protect the police from potential danger." *United States v. Duarte*, 52 F.3d 1067 (5th Cir. 1995) (unpublished opinion) (citing *Opperman*, 428 U.S. at 369).  Inventory searches "may be lawfully conducted while the vehicle is . . . awaiting towing." *Id.* (citation omitted).

"[A]n inventory search of a seized vehicle is reasonable . . . if it is conducted pursuant to standardized regulations and procedures that are consistent with" the purposes of taking an inventory." *McKinnon*, 681 F.3d at 209–10 (internal quotation marks and citation omitted); s*ee also Bertine*, 479 U.S. at 374 ("[R]easonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment."). Yet "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990).  The police officer should follow the established procedures because this "tend[s]

11

to ensure that the intrusion would be limited in scope to the extent necessary to carry out the caretaking function." *Opperman*, 428 U.S. at 375.

Turning to the present case, the Court finds that the inventory search of Sanders' vehicle was proper.  The detectives reasonably concluded that Sanders' car should be impounded and acted pursuant to department policy in conducting an inventory of the vehicle prior to having it towed. Indeed, Special Agent Brown testified that it is standard Lewisville Police Department procedure to inventory a vehicle for liability purposes before releasing it to a tow company.  And Officer Villalvazo testified that a tow truck was called that evening, and an inventory search was conducted pursuant to Lewisville Police Department procedures before releasing the vehicle to the tow company.  Further, although no written inventory policy was offered, the detectives' testimony about the existence of such policy was sufficient. *See United States v. Motton*, 452 Fed. App'x 502, 504 (5th Cir. 2011) (citing *United States v. Andrews*, 22 F.3d 1328, 1334–35 (5th Cir. 1994)). Moreover, notwithstanding Sanders' conclusional assertion, there is no contrary evidence to suggest that the detectives did not follow appropriate procedures for inventorying Sanders' vehicle. *See United States v. Bullock*, 71 F.3d 171, 178 (5th Cir. 1995).  Thus, the Court concludes that the inventory search was reasonable.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Suppression of Evidence (Dkt. #21) is hereby **DENIED**.

**IT IS SO ORDERED.**
 **SIGNED this 9th day of February, 2022.**


_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE